F I L E D
CLERK OF COURT
2024 OCT -7 AM 11: 14
SUPERIOR COURT
OF GUAM

IN THE SUPERIOR COURT OF GUAM

PEOPLE OF GUAM,

v.

DOMINGO CHARGUALAF MENDIOLA
(*aka* DOMINGO SYLVESTER CHARGUALAF MENDIOLA)
(*aka* DING),
DOB: 07/15/1987

        Defendant.

Criminal Case No. CF0109-24
GPD Report Nos. 24-03889 /
24-03672

DECISION AND ORDER
DENYING DEFENDANT'S
MOTION TO SUPPRESS

## INTRODUCTION

This matter came before the Honorable Alberto C. Lamorena, III on July 11, 2024 for hearing on Domingo Chargualaf Mendiola's (*aka* Domingo Sylvester Chargualaf Mendiola's) (*aka* Ding's) ("Defendant's") Motion to Suppress ("Motion"). Assistant Attorney General Leta Womack represents the People, and Attorney Marsil Johnson represents Defendant. Having duly considered the parties' briefs, oral arguments, and the applicable law, the Court now issues the following Decision and Order and **DENIES** Defendant's Motion.

## BACKGROUND

Defendant is indicted on Charge One: Aggravated Murder (as a 1st Degree Felony) with Special Allegation: Possession or Use of a Deadly Weapon in the Commission of a Felony, Charge Two: First Degree Robbery (as a 1st Degree Felony) with Special Allegation: Possession or Use of a Deadly Weapon in the Commission of a Felony, Charge Three: Conspiracy to Commit Robbery (as a 1st Degree Felony), Charge Four: Theft of a Motor Vehicle (as a 2nd Degree Felony), Charge Five: Possession of a Schedule II Controlled Substance (as a 3rd Degree Felony), Charge Six (Two Counts): Possession of a Firearm Without a Firearms Identification Card (as a 3rd Degree Felony), Charge Seven: Destruction of Evidence (as a Misdemeanor), and Charge Eight: Violation of a Court Order (as a Misdemeanor). See Indictment (Feb. 29, 2024).

The charges stem from a deadly shooting on February 14, 2024. See Magistrate's Complaint (Feb. 20, 2024). Defendant allegedly fatally shot Sumittra Lairopi ("Victim") outside the Thai Thai

Decision and Order Denying Defendant's Motion to Suppress
CF0109-24, *People of Guam v. Domingo Chargualaf Mendiola*
Page 1 of 6

Restaurant in Tamuning, before taking off with the Victim's car. Id. Guam Police Department ("GPD") officers located the Victim's car near Defendant's house, and found methamphetamine inside the vehicle. Id.

On February 19, 2024 at 5:55am, GPD officers arrested Defendant in connection with these crimes. See Declaration in Support of Defendant's Motion, Ex: A (Jun. 17, 2024). Defendant was handcuffed and immediately brought to the GPD Criminal Investigation Office. Id.

On February 19, 2024 at 6:55am, GPD Officer Eric Barcinas interviewed Defendant in hopes of conducting a formal interrogation. See Court Recording at 2:52:20pm (Jul. 11, 2024). Before starting the interrogation, Officer Barcinas advised Defendant of his *Miranda* Rights. Id. at 2:52:35pm. This was done through the use of a Custodial Interrogation Rights Form. Id. at 2:54:00pm. After being informed of his *Miranda* rights, Defendant chose to assert his right to counsel and refused to proceed with the interview. Id. at 2:54:30pm. This is evidenced by Defendant's refusal to sign the waiver on the Custodial Interrogation Rights Form. See Exhibit One. Officer Barcinas immediately stopped the interview once Defendant asserted his right to counsel. See Court Recording at 2:54:55pm (Jul. 11, 2024).

Roughly two hours later, at 8:34am, Defendant communicated to GPD that he had changed his mind and now wanted to speak with the detectives. Id. at 2:55:30pm. Officer Barcinas then initiated another custodial interrogation of Defendant. Id. at 2:55:45pm. Like the first interrogation, Officer Barcinas started off by advising Defendant of his *Miranda* rights through the use of a Custodial Interrogation Rights Form. Id. at 2:57:20pm. Unlike the first interrogation, Defendant waived his right to counsel. Id. at 2:58:10pm. This is evidenced by Defendant's signature on the waiver on the Custodial Interrogation Rights Form. See Exhibit Two. After waiving his right to counsel, Defendant proceeded to give a ten (10) to twenty (20) minute long interview with Detective Barcinas. See Court Recording at 2:59:25pm (Jul. 11, 2024). During the interrogation, Defendant made several incriminating statements surrounding the robbery, shooting, and ownership of the drugs found in Victim's vehicle. Id. at 3:00:00pm-3:00:30pm.

Later that morning, at 11:55am, members of the Office of the Attorney General ("OAG"), including Assistant Attorney General Sean Brown and Investigator Henry James arrived at the GPD

Decision and Order Denying Defendant's Motion to Suppress
CF0109-24, *People of Guam v. Domingo Chargualaf Mendiola*
Page 2 of 6

office. Id. at 3:06:45pm. The OAG members were permitted to speak with the Defendant. Id. at 3:08:00pm. Investigator James started the interrogation by advising Defendant of his *Miranda* rights through the use of a Custodial Interrogation Rights Form. Id. at 3:10:40pm. Defendant indicated an understanding of his rights and again decided to waive his right to counsel. Id. at 3:11:30pm. This is evidenced by Defendant's signature on the waiver on the Custodial Interrogation Rights Form. See Exhibit 3. After waiving his right to counsel, Defendant made more incriminating statements to the OAG members. See Court Recording at 3:17:00pm-3:23:50pm (Jul. 11, 2024).

On June 17, 2024, Defendant filed his Motion to Suppress. Defendant seeks to suppress any and all statements made during his February 19, 2024 interviews with GPD and OAG. See Motion at 1 (Jun. 17, 2024). Defendant claims his Fifth Amendment rights were violated because he asserted his right to counsel during the 6:55am interrogation, but GPD and OAG continued to interrogate him at 8:34am and 11:55am. Id. at 4. Defendant claims he did not reinitiate investigatory conversations with GPD or OAG, and only contacted them to inquire about speaking with his co-defendant. Id. at 4. Lastly, Defendant challenges the validity of his *Miranda* rights waiver, claiming it was involuntary and the product of a coercive environment. Id. at 4-5.

On June 19, 2024, the People filed their Response to Defendant's Motion ("Response"). The People claim no Fifth Amendment violations occurred because Defendant voluntarily reinitiated the further communications with GPD and OAG, and waived his *Miranda* rights before the communications in question. See Response at 1-2 (Jun. 19, 2024).

On June 25, 2024, Defendant filed his Reply to Response ("Reply"). Defendant again disputes that he reinitiated investigatory conversations with GPD or OAG, and instead claims any contact he did initiate was solely for the purpose of contacting his co-defendant rather than to discuss the case with investigators. See Reply at 2 (Jun. 25, 2024).

The Court held a hearing on July 11, 2024. After hearing the arguments of the parties, the Court took the matter under advisement.

## DISCUSSION

### I. Preliminary Rules:

Decision and Order Denying Defendant's Motion to Suppress
CF0109-24, *People of Guam v. Domingo Chargualaf Mendiola*
Page 3 of 6

The Fifth Amendment provides for the right against self-incrimination in criminal cases. See U.S. Const. Amend. IV. One's Fifth Amendment right applies both inside and "outside of criminal court proceedings and serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves." See *Miranda v. Arizona*, 384 U.S. 436, 467 (1966).

In order to combat pressures to speak and potentially incriminate oneself during custodial interrogations, individuals "must be adequately and effectively apprised" of their right against self-incrimination. Id. at 467. This is done via the issuing of *Miranda* rights, where an individual is informed of their "right to remain silent", that "anything said can and will be used against the individual in court", of their "right to consult with a lawyer and to have the lawyer with him during interrogation", and "that if he is indigent a lawyer will be appointed to represent him." Id. at 467-473.

If an individual is subject to a custodial interrogation without having been informed of and waiving their *Miranda* rights, any statements made during the interrogation are not admissible during trial. See *Stansbury v. California*, 511 U.S. 318, 322 (1994). Only "voluntary" *Miranda* waivers are valid, which requires a "requisite level of comprehension" and an "uncoerced choice". See *People v. Farata*, 2007 Guam 8 ¶ 46. The voluntary nature of a *Miranda* waiver is judged "from the totality of the circumstances, which includes the background, experience, and conduct of the defendant." Id. at ¶ 46.

If an individual subject to custodial interrogation invokes their right to counsel, they are "not subject to further interrogation until counsel has been made available to him, unless the accused has himself initiated further communication, exchanges, or conversations with the police." See *Edwards v. Arizona*, 451 U.S. 477, 484-485 (1981). "This ... rule embodies two distinct inquiries. First, courts must determine whether the accused actually invoked his right to counsel... Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." See *Smith v. Illinois*, 469 U.S. 91, 95 (1984).

II. **Application:**

Decision and Order Denying Defendant's Motion to Suppress
CF0109-24, *People of Guam v. Domingo Chargualaf Mendiola*
Page 4 of 6

## a. Defendant was subjected to custodial interrogations during his 8:34am and 11:55am interviews.

The first issue the Court must address is whether the Defendant's statements were made during a custodial interrogation, as *Miranda* waivers are required only in those situations. See *People v. Farata*, 2007 Guam 8 ¶ 22. An individual is in custody when he or she "is taken into custody or otherwise deprived of his freedom by the authorities in any significant way". See *Miranda v. Arizona*, 451 U.S. 477, 478 (1981). The test is "would a reasonable person have felt he or she was not at liability to terminate the interrogation and leave." See *Thompson v. Keohane*, 516 U.S. 99, 100 (1995). An individual is subject to interrogation when asked questions "that the police should know are reasonably likely to elicit an incriminating response from the suspect." See *Rhode Island v. Innis*, 446 U.S. 291, 292 (1980).

Here, Defendant was subjected to multiple custodial interrogations. Defendant was in custody since he was arrested, handcuffed, and brought against his will to the GPD Criminal Investigation Office. A reasonable person would not feel they are free to leave such a situation. Defendant was subject to interrogations since Officer Barcinas and the OAG members asked him questions about Defendant's alleged criminal conduct, which they should know are likely to elicit an incriminating response. Therefore, Defendant's statements during his 8:34am and 11:55am interviews must follow a valid waiver of his *Miranda* rights in order to be admissible.

## b. Defendant's statements are admissible because they follow a voluntary waiver of his Fifth Amendment rights.

The next issue the Court must address is whether Defendant validly waived his *Miranda* rights, as Defendant's statements are only admissible following a valid *Miranda* waiver. See *Stansbury v. California*, 511 U.S. 318, 322 (1994).

Here, it is unquestioned that Defendant originally asserted his right to counsel during his 6:55am interrogation with Officer Barcinas. See Exhibit One.

However, it is also clear that that Defendant subsequently revoked that assertion and initiated further discussions with the police before the 8:34am and 11:55am interrogations. The testimony presented shows that Defendant communicated to GPD officers his change of mind and newfound

Decision and Order Denying Defendant's Motion to Suppress
CF0109-24, *People of Guam v. Domingo Chargualaf Mendiola*
Page 5 of 6

desires to speak with detectives about the case. See Court Recording at 2:55:30pm (Jul. 11, 2024). Defendant also made clear to Detective James that he intended on talking to the OAG. Id. at 3:24:30pm. Defendant initiated discussions with GPD and OAG not just to contact his co-defendant, but also to discuss key details of the case. Id. at 3:08:00, 3:13:00-3:20:00pm.

After initiating further discussions with GPD and OAG, Defendant then knowingly and intelligently waived his *Miranda* rights. Before the 8:34am and 11:55am custodial interrogations began, Defendant was informed of his *Miranda* rights. Id. at 2:57:45pm, 3:10:40pm. Defendant indicated that he understood his rights to both Officer Barcinas and Investigator James before initialing next to each right on the Custodial Interrogation Rights Forms. Id. at 2:57:20pm, 3:10:30pm. Defendant then voluntarily signed his name on the waiver section of the Custodial Interrogation Rights Forms. See Exhibits 2 & 3. Nothing was presented to indicate Defendant did not understand what he was doing, or was improperly coerced into signing the waiver. These waivers were clearly voluntarily under the totality of the circumstances.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's Motion. Defendant's statements during his 8:34am and 11:55am interrogations on February 19, 2024 will not be suppressed as they follow a valid waiver of his Fifth Amendment rights.

**IT IS SO ORDERED** this ___October 7, 2024___



_____
**HONORABLE ALBERTO C. LAMORENA, III**
**Presiding Judge, Superior Court of Guam**

Decision and Order Denying Defendant's Motion to Suppress
CF0109-24, *People of Guam v. Domingo Chargualaf Mendiola*
Page 6 of 6